UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:12CV-00010-JHM

PREMIERTOX, INC. AND PREMIERTOX 2.0, INC.                    PLAINTIFFS

VS.

KENTUCKY SPIRIT HEALTH PLAN, INC.;
CENTENE CORPORATION, and JEAN RUSH                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to remand this case to the Russell Circuit Court by Plaintiffs, PremierTox, Inc. and PremierTox 2.0, Inc. [DN 6], on motions to dismiss by Defendants, Kentucky Spirit Health Plan, Inc., Centene Corporation, and Jean Rush, [DN 7, DN 8, DN 9], and on a motion for leave to file an amended notice of removal by Defendants [DN 16]. Fully briefed, these matters are ripe for decision.

## I.  BACKGROUND

On December 28, 2011, Plaintiffs, PremierTox, Inc, and PremierTox 2.0, Inc. (collectively "PremierTox"), filed this action in the Russell Circuit Court against Kentucky Spirit Health Plan, Inc., its parent company Centene Corporation, and Jean Rush, individually and as President of Kentucky Spirit Health Plan, Inc.  In the Complaint, PremierTox alleges that it provided medical services to Kentucky Medicaid recipients and is entitled to compensation from Kentucky Spirit. (Complaint at ¶¶ 8, 9, and 11.)  PremierTox claims that by failing to properly pay for services rendered, Kentucky Spirit violated KRS 304.17A-702[1] which mandates that all claims shall be paid

---

[1]KRS § 304.17A-702 provides:
(1) Except for claims involving organ transplants, each insurer shall reimburse a provider for a clean claim or send a written or an electronic notice denying or contesting the claim within thirty (30) calendar days from the date that the claim

within 30 days.  (Id. at ¶ 10.)  Additionally, PremierTox claims that each of the Defendants made false representations to PremierTox that they would in fact be paid.  (Id. at ¶ 12.)

The Commonwealth of Kentucky is subdivided into eight Medicaid regions.  Prior to 2011, seven of the eight regions were administered directly by the Kentucky Cabinet for Health and Family Services.  In the Louisville region, the Cabinet contracted with University Healthcare in a managed care contract.  The Cabinet paid University Healthcare a capitated rate for Medicaid recipients.  University Healthcare then entered into agreements with providers and paid them for services provided to Medicaid recipients.  In the other seven regions, the Cabinet dealt directly with healthcare providers and the providers received payment for services directly from the Cabinet.

In 2011, the Cabinet awarded three companies, Kentucky Spirit, Wellcare, and Coventry Healthcare, managed care contracts to administer Medicaid benefits for the other seven regions.  On July 3, 2011, Kentucky Spirit signed its agreement with the State to arrange for the provision of medical services to those individuals eligible under the Kentucky Medicaid Program. (Medicaid Managed Care Contract, DN 17-2.)  The Managed Care Contract between Kentucky Spirit and the

--------

is received by the insurer or any entity that administers or processes claims on behalf of the insurer. Clean claims involving organ transplants shall be paid, denied, or contested within sixty (60) calendar days from the date that the claim is received by the insurer or any entity that administers or processes claims on behalf of the insurer.
(2) Within the applicable claims payment time frame, an insurer shall:
     (a) Pay the total amount of the claim in accordance with any contract between the insurer and the provider;
     (b) Pay the portion of the claim that is not in dispute and notify the provider, in writing or electronically, of the reasons the remaining portion of the claim will not be paid; or
     (c) Notify the provider, in writing or electronically, of the reasons no part of the claim will be paid.
KRS § 304.17A-702(1), (2).

Commonwealth provides in relevant part as follows:

> In accordance with the Balanced Budget Act (BBA) Section 4708, the Contractor shall implement Claims payment procedures that ensure 90% of all Provider Claims for which no further written information or substantiation is required in order to make payment are paid or denied within thirty (30) days of the date of receipt of such Claims and that 99% of all Claims are processed within ninety (90) days of the date of receipt of such Claims.  In addition, the Contractor shall comply with the Prompt-Pay statute, codified within KRS 304.17A-700-730, as may be amended, and KRS 205.593, and KRS 304.14-135 and 99-123, as may be amended. . . . .  Any conflict between the BBA and Commonwealth law will default to the BBA unless the Commonwealth requirements are stricter.

(Medicaid Managed Care Contract, § 29.1.)

Kentucky Spirit then contracted with Commonwealth Healthcare Corporation, d/b/a Center Care to use Center Care's existing network of providers.  PremierTox, who was already a contract provider with Center Care, entered into an amendment with Center Care on November 14, 2011, agreeing to provide services to Kentucky Medicaid recipients covered by the Kentucky Spirit Managed Care Plan.[2] (DN 9-3.)  Pursuant to these contracts, PremierTox claims that it performed and continues to perform certain lab testing and that Kentucky Spirit has failed and refused to pay PremierTox for over 2,000 tests performed.  Because Kentucky Spirit has failed to pay the past due invoices, PremierTox brought suit in Russell Circuit Court.

---

[2]The Notice of Amendment between Center Care and Premiertox specifically provides that

> **Claims Payment.**  In accordance with the Balanced Budget Act (BBA) Section 4708, MCO shall ensure that all Provider claims for which no further written information or substantiation is required in order to make payment, are paid or denied within thirty (30) days of the date of receipt of such claims and that all claims are processed within ninety (90) days of the date of receipt of such claims. In addition, MCO will comply with the Prompt-Pay statute, codified within KRS 304.17A-700-730, as may be amended, and KRS 205.593, and KRS 304.14-135 and 99-123, as may be amended.

(Notice of Amendment, Appendix 1, § 4.6.)

Defendants removed the case to this Court.  Upon removal of the case, Defendants immediately filed motions to dismiss the Complaint for failure to state a claim, or alternatively to compel arbitration. [DN 7, DN 8, DN 9]  Plaintiffs timely filed a motion to remand pursuant to 28 U.S.C. § 1447(c) arguing that federal question jurisdiction does not exist.  Thereafter, Defendants filed a motion to amend/correct the notice of removal. [DN 16]

## II.  MOTION TO REMAND

Defendants initially removed this action from state court on grounds of federal question jurisdiction arguing that Plaintiffs' claim for compensation for services provided to Kentucky Medicaid recipients is "entirely a claim under federal law."  (Notice of Removal ¶ 21.) Alternatively, Defendants argue that removal is proper because "the entitlement to, amount of, and timing of, any such payments is determined by federal law," and thus, the claims raise a substantial federal question as that term is defined in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005). (Id.)  Additionally, Defendants assert that the federal Medicaid laws, specifically 42 U.S.C. § 1396u-2, preempts Plaintiffs' state law claims.  (Id. at ¶ 22.) Defendants filed a motion for leave to file an amended notice of removal to clarify some factual errors in the notice of removal, specifically that Plaintiffs are "in network" providers.  Defendants represent that there is no intention for this amended notice to assert any new grounds for removal. Plaintiffs move to remand the case to state court arguing that this Court lacks federal question jurisdiction and object to the motion for leave to file an amended notice of removal.

Having found that the amended notice of removal merely clarifies factual errors in the notice of removal, the Court grants the Defendants motion for leave to file an amended notice of removal. Therefore, the Court considers both the notice of removal and amended notice of removal in

deciding the Plaintiffs' motion for remand.

## A. Federal Question Jurisdiction

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable" to federal court. 28 U.S.C. § 1441(b). "A claim falls within this court's original jurisdiction under 28 U.S.C. § 1331 'only [in] those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiff[']s right to relief necessarily depends on resolution of a substantial question of federal law.'" Eastman v. Marine Mechanical Corp., 438 F.3d 544, 550 (6th Cir. 2006) (citation omitted). However, "the plaintiff is the master of the claim," Gafford v. General Elec. Co., 997 F.2d 150, 157 (6th Cir. 1993), and "the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action." Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 943 (6th Cir. 1994). The defendant bears the burden of establishing the existence of federal subject matter jurisdiction and the propriety of the removal. Eastman, 438 F.3d at 549. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The Supreme Court has developed two limited exceptions to the well-pleaded complaint rule: the complete preemption doctrine and the substantial federal question doctrine." Taylor Chevrolet Inc. v. Medical Mut. Services LLC, 306 Fed. Appx. 207, 210 (6th Cir. Dec. 22, 2008).

### 1. Complete Preemption

Defendants claim that the Plaintiffs' statutory state-law claims are preempted by the Balanced Budget Act, Section 4708, the Federal Deficit Reduction Act of 2005, 42 U.S.C. § 1396u-

2, which "sets the federal standard fee timely payment of Medicaid claims."  (Amended Notice of

Removal ¶ 22.)          Title 42 U.S.C. §1396u-2(f) provides in relevant part that

> A contract under section 1396b(m) of this title with a medicaid managed care organization shall provide that the organization shall make payment to health care providers for items and services which are subject to the contract and that are furnished to individuals eligible for medical assistance under the State plan under this subchapter who are enrolled with the organization on a timely basis consistent with the claims payment procedures described in section 1396a(a)(37)(A) of this title, unless the health care provider and the organization agree to an alternate payment schedule . . . .

42 U.S.C. § 1396u-2.  Title 42 U.S.C. § 1396a(a)(37) provides that a State plan for medical

assistance must –

> (37) provide for claims payment procedures which (A) ensure that 90 per centum of claims for  payment (for which no further written information or substantiation is required in order to make payment) made for services covered under the plan and furnished by health care practitioners through individual or group practices or through shared health facilities are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of receipt of such claims . . . .

42 U.S.C. § 1396a(a)(37).

   Complete preemption arises where Congress has so completely preempted a particular area

"that any civil complaint raising this select group of claims is necessarily federal in character."

Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58,  63-64 (1987).  In such cases, the plaintiff has

essentially "'brought a mislabeled federal claim.'"  Taylor Chevrolet Inc. v. Medical Mut. Services,

306 Fed. Appx. 207, 210 (6th Cir. 2008)(quoting King v. Marriott Int'l, Inc., 337 F.3d 421, 425 (4th

Cir. 2003)).  "Unlike ordinary preemption, which is a federal defense to a state-law claim under the

Supremacy Clause of the Constitution that does not render a state-law claim removable to federal

court, complete preemption makes a state-law claim 'purely a creature of federal law,' and thus

removable from state to federal court from the outset."  Hansen v. Harper Excavating,Inc., 641 F.3d

6

1216, 1220-1221 (10th Cir. 2011)(quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23–24 (1983)).  See also Harvey v. Life Ins. Co. of North America, 404 F. Supp. 2d 969, 973 (E.D. Ky. 2005)(citing Caterpillar, Inc. . Williams, 482 U.S. 386, 393 (1987)); Roddy v. Grand Trunk Western Railroad, Inc., 395 F.3d 318, 323 (6th Cir. 2005).

Complete preemption is a very narrow exception to the well-pleaded complaint rule. AmSouth Bank v. Dale, 386 F.3d 763, 776 (6th Cir. 2004).  See also Roddy, 395 F.3d at 323.  In fact, the Sixth Circuit in AmSouth Bank summarized the law in this area and noted the Supreme Court has only found three statutes that evince Congressional intent to completely preempt a field: § 301 of the LMRA, see Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968), § 502(a)(1)(B) of ERISA, see Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-66 (1987), and §§ 85 and 86 of the National Bank Act, see Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 10-11 (2003).  AmSouth Bank, 386 F.3d at 776; see also Mikulski v. Centerior Energy Corp., 501 F.3d 555, 563 (6th Cir. 2007).  "In those cases where the Supreme Court has found complete preemption, 'the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'"  Roddy, 395 F.3d at 323 (quoting Beneficial Nat'l Bank, 539 U.S. at 8.).

Defendants have not established that federal law creates the exclusive cause of action for healthcare providers to sue a managed care organization for non-payment for services, or for that matter, that federal law creates any private right of action for such an action by a provider against a managed care organization for non-payment.  See Baptist Hospital of Miami, Inc. v. Wellcare of Florida, Inc., 2011 WL 2084003, *6 (S.D. Fla. May 23, 2011)("it is clear to the Court that Wellcare has not established any aspect of federal [Medicaid] law that *completely* preempts Florida law

7

regarding emergency-services reimbursement such that this case is removable."); <u>Hood v.</u> <u>AstraZeneca Pharmaceuticals, LP,</u> 744 F. Supp. 2d 590, 605 (N.D. Miss. 2010).  Instead, the statutory provision of § 1396u-2(f) merely instructs the State concerning the timeliness of payment provisions to be placed in managed care contracts.  It does not provide that the sole cause of action for non-payment of services against a managed care organization is under federal law.  In fact, the statute recognizes that the health care provider and the managed care organization can agree to an alternate payment schedule. 42 U.S.C. § 1396u-2(f).  Furthermore, "Medicaid is the hallmark of 'cooperative Federalism.'" <u>Hood,</u> 744 F. Supp. 2d at 605(quoting <u>Harris v. McRae,</u> 448 U.S. 297, 308 (1980)).  Medicaid  is administered jointly by state and federal government and is described as "'a cooperative federal-state program that directs federal funding to states to assist them in providing medical assistance to low-income individuals.'" <u>G., ex rel., K. v. Hawaii, Dept. of Human Services,</u> 2009 WL 1322354, *2 (D. Haw. May 11, 2009)(citing <u>Ball v. Rodgers,</u> 492 F.3d 1094, 1098 (9th Cir. 2007)).  Thus, "the very nature of the Medicaid program nullifies any claim that it completely preempts [Kentucky] law in order to warrant federal removal jurisdiction." <u>Hood,</u> 744 F. Supp. 2d at 605.

    In as much as Defendants raise provisions of the federal Medicaid statute and regulations as a defense to certain aspects of  Plaintiffs' state law claims, a defense of preemption does not itself provide a basis for federal question jurisdiction.  "'[A] case may *not* be removed to federal court on the basis of a federal defense, including a defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'" <u>In re Air Crash at Lexington, Kentucky,</u> 486 F. Supp. 2d 640, 645 (E.D. Ky. 2007)(quoting <u>Roddy,</u> 395 F.3d at 322).  In fact, a defense that an action is preempted is

properly heard and decided by the state court in which the action was initiated. Mikulski, 501 F.3d at 560-61; Adkins v. Excel College of Corbin, Inc., 21 F.3d 427, 1994 WL 124268, *3 (6th Cir. 1994) ("Kentucky's state courts are equally capable of determining [defendant's] preemption defense.").

Finally, while Defendants cite preemption as a justification for jurisdiction in both its notice of removal and amended notice of removal, Defendants did not address preemption in its response to the motion to remand. Thus, it appears to the Court that Defendants have conceded that complete preemption is not a proper grounds for removal of the present action.

For these reasons, the Court finds that Plaintiffs' claims are not completely preempted by federal Medicaid statutes and regulations, and removal was not proper on this basis.

## 2. Substantial Federal Question

Defendants argue that the Court has jurisdiction because the merits of the case turn on a substantial federal issue. Specifically, Defendants contend that Plaintiffs have essentially presented claims for reimbursement under the Medicaid system for medical lab services provided by PremierTox to individuals in the Medicaid program. According to Defendants, the validity of these claims, the amount owed, and the timing of any payments is ultimately controlled by federal statute and regulation, both by operation of law and by the contract which governs the relationship between PremierTox and Kentucky Spirit. (Defendants' Response at 2.) Additionally, Defendants contend removal is warranted because the federal Medicaid program involves a federal regulatory scheme requiring uniformity in its interpretation and because Medicaid is primarily funded by the federal government. (Id. at 9.)

The Complaint does not explicitly refer to or invoke any federal law for the relief Plaintiffs

9

seek. Even when no federal claim is present in a complaint, the Supreme Court has found that "a case may arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 808 (1986) (quoting Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 9 (1983)). See also Mikulski, 501 F.3d at 568. However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow, 478 U.S. at 813. Federal question jurisdiction premised on the adjudication of a federal issue within a state law claim "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons., 545 U.S. at 313. The United States Supreme Court has identified three parts to the substantial-federal-question doctrine: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." Mikulski, 501 F.3d at 568 (citing Grable & Sons, 545 U.S. at 314).

Applying these principles, the Court finds that the substantial federal question doctrine does not support removal in this case. First, Defendants have not identified any federal statute actually in dispute. Both the Managed Care Contract and the Notice of Amendment identified by Defendants specifically incorporate both federal and state law within those contracts. In fact, Congress in 42 U.S.C. § 1396u-2(f) recognized that managed care organizations and health care providers can agree to alternative payment schedules. Consistent with the Balanced Budget Act, 42 U.S.C. § 1396u-2, Kentucky Spirit agreed to comply with Kentucky's prompt-pay statute, KRS 304.17A-700-730. Additionally, even if a court may need to refer to the federal Medicaid statute and its regulations in

examining the reimbursement claims, "the federal courts have rejected the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." <u>Baptist Hosp. of Miami, Inc. v. Wellcare of Florida, Inc.</u>, 2011 WL 2084003, *4 n. 5 (S.D. Fla. May 23, 2011)(citing <u>Adventure Outdoors, Inc. v. Bloomberg</u>, 552 F.3d 1290, 1300 (11th Cir. 2008)(citing <u>Grable</u>, 545 U.S. at 313)); <u>Pruitt v. Honda of America Mfg. Inc.</u>, 2006 WL 889498, *5 (M.D. Tenn. March 28, 2006)(reference to federal law requiring trucks operated in interstate commerce to be insured for various limits does not create a substantial federal question).

Second, the Court finds that the federal aspect of Medicaid law in this case "does not present a substantial federal issue that would give this Court original jurisdiction over [PremierTox's] state-law reimbursement claim." <u>Baptist Hosp.</u>, 2011 WL 2084003, *4.  A year after deciding <u>Grable</u>, the United States Supreme Court in <u>Empire Healthchoice Assur. Inc. v. McVeigh</u>, 547 U.S. 677 (2006), elaborated on the key factors that had supported a finding that a substantial federal interest existed in <u>Grable</u>.  The Supreme Court emphasized that in <u>Grable</u>, the "dispute centered on the action of a federal agency and its compatibility with a federal statute; the resolution of the federal issue was dispositive of the case; the interpretation of the IRS statute would be controlling in numerous other cases; and the federal aspect of <u>Grable</u> involved a 'nearly pure issue of law.'" <u>Baptist Hosp.</u>, 2011 WL 2084003, *4 (quoting <u>Empire Healthchoice</u>, 547 U.S. at 682-83.). <u>See</u> <u>Mikulski</u>, 501 F.3d at 570.  By contrast, in denying federal jurisdiction in <u>Empire Healthchoice</u>, the Supreme Court noted "the dispute was between private parties, the federal issue was not dispositive, and the nature of the state claim was 'fact-bound and situation-specific.'" <u>Id.</u>

Unlike <u>Grable</u>, this dispute is between private parties and the actions at the center of the lawsuit are those taken by Kentucky Spirit, a private party, and not a federal actor.  <u>Main &</u>

11

Associates, Inc. v. Blue Cross and Blue Shield of Alabama, 776 F. Supp. 2d 1270, 1281 (M.D. Ala. 2011)(rejecting insurer's argument that removal was proper because claims asserted by an operator of nursing home healthcare facility for non-payment of benefits against the managed care organization arise under the Medicare Act); Baptist Hospital, 2011 WL 2084003, *4.  The dispute in this case centers around whether Kentucky Spirit failed to timely pay for services rendered by PremierTox in violation of the applicable contracts and Kentucky's prompt-pay statute.  Thus, the dispute in this case is "unlikely to impact the federal government's interests or its ability to vindicate those interests through administrative action."   Baptist Hosp., 2011 WL 2084003, * 4(quoting Adventures Outdoors, 552 F.3d at 1300).[3]  Additionally, unlike Grable, where the issues were purely issues of law, the determination of the issues in the present case will be more fact-bound and situation specific, perhaps involving detailed factual considerations of each claim in question.  Id. Further, despite Defendants' argument to the contrary, "the fact that a federally created program, Medicaid, serves as the initial source of the funds the [Plaintiffs] seek[] to recover does not, without more, confer federal jurisdiction." Pennsylvania v. Eli Lilly & Company, Inc., 511 F. Supp. 2d 576, 585 (E.D. Pa. 2007).

     The Court also rejects Defendants' argument that the determination of whether the services

---

     [3] Cf. In re Zyprexa Products Liability Litigation, 2009 WL 691942, *3 (E.D.N.Y. March 11, 2009)(citing In re Zyprexa Products Liability Litigation, 451 F. Supp. 2d 458 (E.D.N.Y. 2006) (accepting jurisdiction of Medicaid-related claims under Grable standard when "[t]he national nature of the Zyprexa litigation is illustrated by the present federal efforts to settle all claims of the United States and the fifty states, as well as by the combined resolution of the fifty state Medicaid liens and federal Medicare liens for individual tort recoveries for personal injury, demonstrating that uniformity in treating federally-based claims brought in this multidistrict litigation is desirable.").  The decision in In re Zyprexa Products Liability Litigation has not been followed by numerous courts.  See, e.g., Hood v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., 2009 WL 561575, *1 (N.D. Miss. Mar. 4, 2009)(citing cases).

were medically necessary presents a substantial federal question under Grable.  In response to the motion to remand, Defendants contend that the services in question were not "medically necessary" as defined in 42 C.F.R. § 440.230 and 42 U.S.C. § 1396d.  According to Defendants, the Notice of Amendment defines "medically necessary" or "medical necessity" as "Covered Services which are medically necessary as defined under 907 KAR 3:130, and provided in accordance with 42 CFR § 440.230, including children's services pursuant to 42 U.S.C. 1396d(r)."  (Notice of Amendment, Appendix 1, § 2.6.)  In light of this provision, Defendants contend that the issue of medical necessity presents a federal issue sufficient to confer jurisdiction under the substantial-federal question doctrine.  However, Defendants' argument that the claims were not medically necessary is properly characterized as a defense to the Plaintiffs' state-law reimbursement claim. "[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987) (emphasis in the original) (citing Franchise Tax Board, 463 U.S. at 12; see also Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003).  Additionally, even if "medical necessity" was considered a federal issue in the present case, there is no dispute as to the meaning of the terms "medically necessary" or "medical necessity."   As discussed above, state courts are fully competent to construe any federal Medicaid statute or regulation related to the timeliness of payments or the medical necessity of a particular service.  See Merrell Dow, 478 U.S. at 813; Baptist Hosp.,2011 WL 2084003, *4 n. 5.

Thus, in light of Grable and Empire Healthchoice, the Court finds that Plaintiffs claims do not raise a substantial federal issue.

Third, even if the Court were to conclude that a substantial federal question existed, the Court finds that accepting jurisdiction of this state-law reimbursement claim would be disruptive of the sound division of labor between state and federal courts envisioned by Congress. Eastman v. Marine Mechanical Corp., 438 F.3d 544, 553 (6th Cir. 2006); Grable & Sons, 545 U.S. at 314; In re Oxycontin Antitrust Litigation, 821 F. Supp. 2d 591, 600 (S.D.N.Y. 2011). Defendants have not demonstrated that federal law creates any private right of action for a health care provider against a managed care organization for non-payment for services rendered. See Baptist Hosp., 2011 WL 2084003, *6; Hood, 744 F. Supp. 2d at 605; In re Oxycontin Antitrust Litigation, 821 F. Supp. 2d at 600 ("[A]s other federal district courts have found, it is telling that Congress has specifically obligated states to seek reimbursement of Medicaid funds from legally liable third parties, see 42 U.S.C. § 1396a(a)(25)(A), but has provided no federal cause of action to do so."); Utah v. Eli Lilly & Co., 509 F. Supp. 2d 1016, 1023 (D. Utah 2007); South Carolina v. Eli Lilly & Co., Inc., 2007 WL 2261693, at *2–3 (D.S.C. Aug. 3, 2007)). While not dispositive, the Sixth Circuit has held that the absence of a private right of action suggests that Congress did not intend for federal courts to exercise jurisdiction. Eastman v. Marine Mechanical Corp., 438 F.3d 544, 552 (6th Cir. 2006)("Congress' withholding a private right of action from [a] statute[] is an important signal to its view of the substantiality of the federal question involved."). "[A] finding of federal jurisdiction over any state cause of action implicating provisions of the Federal Medicaid Act and its accompanying regulations could 'attract [ ] a horde of original filings and removal cases raising other state claims with embedded federal issues.'" Hood, 2009 WL 561575, *3 (quoting Grable, 545 U.S. at 313). Under these circumstances, "the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in

14

the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.'" Id.  See also Hawaii v. Abbott Labs., Inc., 469 F. Supp. 2d 842, 856 (D. Haw. 2006) (observing that "if Congress had thought that [average wholesale price] and other Medicare provisions implicated a substantial federal interest, it could have ensured that only federal courts would hear such cases," but it did not).

Based on the foregoing, the Court finds that the substantial federal question doctrine set forth in Grable does not support removal in this case.

## B.  Plaintiffs' Request for Costs and Attorney's Fees

Pursuant to 28 U.S.C. § 1447(c), a district court that remands a case may require payment of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Whether to award costs, fees, and expenses is within the discretion of the trial court.  Norton Hospitals, Inc. v. Sagamore Health Network, Inc., 2011 WL 1885636, *3 (W.D. Ky. May 18, 2011)(citing Morris v. Bridgestone/Firestone, Inc., 985 F.2d 238, 240 (6th Cir. 1993)).  "'Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.'" Id. (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)).  "'Conversely, when an objectively reasonable basis exists, fees should be denied.'" Id.  In the present case, the Court finds that although removal was ultimately improper, the Court is not satisfied that the Defendants lacked an objectively reasonable basis for removal.  Accordingly, the Court will not award costs, fees, and expenses to Plaintiffs.

## III.  CONCLUSION

In the absence of subject matter jurisdiction, the Court cannot reach the merits of the motion to dismiss.  For these reasons, **IT IS HEREBY ORDERED** that Plaintiffs' motion for remand [DN

6] is **GRANTED** and Defendants' motions to dismiss [DN 7, DN 8, DN 9] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants' motion for leave to file an amended notice of removal [DN 16] is **GRANTED**.  The amended notice of removal was considered in deciding the motion to remand.   The case is **REMANDED** to the Russell Circuit Court.

cc: counsel of record
    Russell Circuit Court

Joseph H. McKinley, Jr., Chief Judge
United States District Court

May 29, 2012

16